**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.**      **- Civ**

GEORGE CARLTON THORNTON, an
individual; and SAUNDERS THORNTON
LLC, a South Carolina limited liability
company,

       Plaintiff,

v.

VALLARINO FRY LAW P.A. d/b/a
BUFETE VALLARINO y ASOCIADOS, a
professional association; NICHOLAS
APOSTOL, an individual; ANDRES JAEN,
and individual STUART MONTGOMERY;
an individual; and JANET MONTGOMERY,
an individual.

       Defendants.

_____/

**COMPLAINT**

Plaintiffs, GEORGE CARLTON THORNTON ("**Mr. Thornton**") and SAUNDERS

THORNTON LLC ("**ST LLC**") (collectively referred to as "**Plaintiffs**"), by and through

undersigned counsel, hereby sue Defendants, VALLARINO FRY LAW P.A. d/b/a BUFETE

VALLARINO y ASOCIADOS ("**Vallarino**"), NICHOLAS APOSTOL ("**Mr. Apostol**"),

ANDRES JAEN ("**Mr. Jaen**") and STUART MONTGOMERY ("**Mr. Montgomery**") JANET

MONTGOMERY ("**Mrs. Montgomery**") (collectively, "**the Montgomerys**") (collectively each

of the parties named as Defendants are referred to as "**Defendants**") and state:

**JURISDICTION, VENUE & PARTIES**

1.     This is an action for damages exceeding $75,000.00, exclusive of interest,

attorneys' fees and costs, stemming from Defendants' breach of contract, fraudulent inducement,

breach of fiduciary duty, violation of Florida's Deceptive and Unfair Trade Practices Act, unjust enrichment, civil conspiracy, and other wrongful actions. This action is therefore within the subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a)(1).

2.      There is complete diversity of citizenship among the parties as required pursuant to 28 U.S.C. § 1332(a)(2).

3.      Plaintiff Mr. Thornton is a citizen of South Carolina, over the age of eighteen, and is otherwise *sui juris*.

4.      Plaintiff ST LLC is a citizen of South Carolina, formed under and pursuant to South Carolina Law. ST LLC is registered solely in South Carolina and maintains its principal place of business there. ST LLC is comprised of two members both of which are citizens of the State of South Carolina:

    a.   Member one: George Thornton is a citizen of South Carolina.

    b.   Member two: William Doug Saunders is a citizen of South Carolina.

5.      Defendant Vallarino is a Florida profit corporation, incorporated under the laws of Florida, with its principal place of business located at 789 SW Federal Highway, Suite 200, Stuart Florida 34994.

6.      Defendant Mr. Apostol is a Florida citizen, is over the age of eighteen, and is otherwise *sui juris*.

7.      Defendant Mr. Jaen is a Panamanian citizen, is over the age of eighteen, and is otherwise *sui juris*.

8.      Defendant Mr. Montgomery is a citizen of the State of Florida, residing at 2212 Paget Circle, Naples, FL 34112, is over the age of eighteen, and is otherwise *sui juris*.

9.      Defendant Mrs. Montgomery is a citizen of the State of Florida, residing at 2212

Paget Circle, Naples, FL 34112, is over the age of eighteen, and is otherwise *sui juris*.

10.     Mr. Jaen submitted himself to the jurisdiction of this Court by committing one or more of the acts enumerated in Section 48.193(1)(a) Florida Statutes, including, but not limited to operating, conducting, engaging in, or carrying on business or business venture in this state, committing a tortious act in the state, and otherwise engaging in solicitation or service activities within this state. Specifically, Mr. Jaen purposefully and consistently engaged in business activities in the state, both individually and on behalf of Vallarino, a Florida Corporation. Mr. Jaen, through his work with and for Vallarino, targeted Plaintiffs and obtained funds from them. Mr. Jaen facilitated the holding of such funds with no intent to return them at a Wells Fargo Bank located in Stuart, Florida, breaching Vallarino's fiduciary duties and perpetuating fraud. Mr. Jaen regularly made fraudulent representations and transactions on behalf of Vallarino. Such activity is continuous through the present date.

11.     Further, Mr. Jaen engaged in substantial activity within this state pursuant to Section 48.193(2), Florida Statutes, including but not limited to, using Vallarino, a Florida Corporation to facilitate consistent efforts to defraud Mr. Thornton and perpetuate investment of funds in this state, with no intention of returning said funds.

12.     Venue is also proper in the Southern District of Florida because it is the designated venue under the Agreements[1] at issue.

## GENERAL ALLEGATIONS

13.     This action stems from the bad faith actions of Defendants which were intended to and successfully did induce Mr. Thornton to invest substantial, identifiable sums of money with Defendants, which funds were thereafter improperly converted by Defendants.

---

[1] As defined below in the General Allegations. *See Exhibits A and B* at ¶ 17, infra.

14.     Mr. Thornton was first introduced to Vallarino and Mr. Apostol by the Montgomerys.

15.     Upon information and belief, the Montgomerys worked in concert together to systematically approach individuals in their community and persuade them into investing with Vallarino and Defendants generally. Mrs. Montgomery arranged for social engagements to gain the trust of potential "investors" such as Mr. Thornton. Mrs. Montgomery was present during at least the initial discussion with Mr. Thornton concerning the "investment opportunity."

16.     Mr. Montgomery vouched for Vallarino and Mr. Apostol, and assured Mr. Thornton of their supposed legitimacy and the supposed legitimacy of the investment opportunities offered by Vallarino and Mr. Apostol (the "Fraudulent Misrepresentations"), in order to induce Plaintiffs to trust Defendants and take part in the "investment opportunity."

17.     Mr. Montgomery advised Mr. Thornton that he had been involved in this opportunity for 15 years, that dividends would range from between 25% to 40% per annum in 180 days or less without fail, and that the funds have never been returned late.

18.     Mr. Montgomery even went so far as reviewing the "investment opportunity" with Plaintiffs, directly sharing the documents pertaining to the "investment opportunity" with Plaintiffs. Mr. Montgomery represented that he was personally invested in the project and that his son had invested $300,000. Mr. Montgomery regularly boasted of the successes he supposedly had with such opportunities, claiming that grateful colleagues had provided him with gifts in return for his guidance.

19.     Mr. Montgomery's inducement of Plaintiffs was conducted in coordination with Mr. Andres Jaen, a principal in Vallarino's Panama offices. Mr. Montgomery worked in tandem with Mr. Jaen to induce Plaintiffs to take part in this "investment opportunity."

20.     On or about January 2021, Mr. Jaen contacted Mr. Thornton at the request of Mr. Montgomery. Mr. Jaen advised that Vallarino provides "legal advisory services," that Vallarino had represented Mr. Montgomery for over fifteen years, and that if Mr. Thornton "had an interest, he would be welcomed as a client through [his] friendship with Stuart, who told me he 'owes' you one. I am sure he'll explain." Mr. Jaen informed Mr. Thornton that he could address any questions concerning the "investment opportunity" with Mr. Montgomery.

21.     On January 19, 2021, Mr. Jaen provided information to Mr. Thornton pertaining to the funding backing the "investment opportunity," claiming there were hundreds of millions of dollars in funds to support the purchase of medical supplies that Mr. Thornton was investing in, and provided documentation illustrating these various supplies and supposed board certificates from the Panamanian government.

22.     Mr. Jaen would frequently assure Mr. Thornton of the legality of the "investment opportunity." Mr. Jaen represented to Mr. Thornton throughout his dealings that the "investment opportunity" was backed by the Panamanian government, even supplying a letter concerning the funding that he claimed was from the Panamanian president. Mr. Montgomery also regularly acted as an intermediary in communications with Mr. Thornton about the particulars of the "investment opportunity."

23.     On March 1, 2021, in reliance on Mr. Montgomery and Mr. Jaen's representations, Mr. Thornton made an initial investment with Vallarino and Mr. Apostol in the amount of $200,000, subject to an Escrow Agreement with Vallarino (the "Initial Agreement").

24.     On March 9, 2021, likewise in reliance on Mr. Montgomery and Mr. Jaen's representations, Mr. Thornton, as a principal of ST LLC, executed an Addendum to the Initial

Agreement and made an initial investment of $100,000 in March of 2021 using ST LLC funds.[2]

25.     Mr. Montgomery was instrumental in procuring ST LLC's funds, acting as a liaison between Mr. Jaen and Mr. Thornton.

26.     On June 3, 2021, to further induce Mr. Thornton to enter into a new "investment opportunity," Mr. Thornton was quickly paid $280,000, an approximate 40% return on the initial investment of $200,000 (the "Hook").

27.     Upon information and belief, the Hook was a collective effort by Defendants to convince Mr. Thornton of Defendants' legitimacy, in anticipation of enticing Mr. Thornton into making a larger "investment" thereafter, that they intended to steal from him.

28.     On June 4, 2021, one day after successfully inducing Plaintiffs through the Hook, Mr. Jaen wrote to Mr. Thornton and broached the next "investment opportunity." Mr. Jaen suggested that Mr. Thornton, "follow Stu's lead and his suggestions and discuss the venues with him." Mr. Jaen reassured Mr. Thornton that, "I am always there for the legal and contract portion of the deals as well…"

29.     On June 9, 2021, Mr. Thornton thereafter made the half-million-dollar investment ($500,000) in reliance on the representations made by the Defendants, pursuant to an Escrow Agreement attached hereto as Exhibit "B" (the "Escrow Agreement"), and caused $500,000 to be wire transferred from Mr. Thornton's accounts to a Wells Fargo Bank Account in Vallarino's name (the "Escrow Account").

30.     These funds were being held in addition to the $100,000 initially invested by ST LLC (the "Converted Funds").

31.     On June 10, 2022, *one day after the Escrow Agreement was executed,* Mr. Thornton

---

[2] The March 1, 2021, Escrow Agreement and the Addendum thereto will be collectively referred to as the "Initial Agreement" and are attached as Exhibit "A."

was then notified by Mr. Jaen that the ST LLC investment was received two days too late to result in repayment as a part of the initial round of investments, and ST LLC was not repaid and received no return on investment of the $100,000. Mr. Jaen informed Mr. Thornton that he would receive the escrow and the additional returns, totaling $140,000, by the following week. Mr. Montgomery was copied on this communication.  At the same time, Mr. Montgomery provided conflicting information, stating that the ST LLC investment had been rolled into, and was now a part of, the $500,000 investment.

32.     Plaintiffs nonetheless continued to demand return of ST LLC's $100,000 investment and were promised several times by Mr. Jaen that the funds would be returned within a matter of days.

33.     Both the Initial Agreement and the Escrow Agreement contain largely identical language and provide that the Escrow Funds must be maintained in a specified account at Wells Fargo, that Nicholas Apostol shall be the sole signatory on the Escrow Account, on behalf of Mr. Thornton and that no other individual shall be added as a signatory to the Escrow Account. See *Exhibits "A" and "B"* at ¶¶ (2)(a) and (6)(a).

34.     Both the Initial Agreement and the Escrow Agreement require that the Escrow Agent submit reports of the status of the transaction to investors every fifteen (15) days and arrange meetings or appointments, if necessary, for any important information related to the transaction. See *Exhibits "A" and "B"* at ¶ 6(c).  The Escrow Agent failed to regularly provide Mr. Thornton with status reports and such reports were only provided sporadically upon demand by Mr. Thornton.

35.     The Initial Agreement and the Escrow Agreement provide as follows as to the obligations to return the Converted Funds:

> Upon full execution of this agreement and acceptance by the Escrow Agent, the Investor shall deposit USD $500,000 [$200,000] (hereinafter the "Escrow Funds") in the Escrow Account to be held by the Escrow Agent for no more than 120 days from the date of deposit (hereinafter the "Funding Period"). Upon the expiration of the Funding Period, the Escrow Funds plus an agreed return amount ("the Returns") shall be refunded in full to Investor within FIVE (5) days of receiving a written request for said refund. The Parties may extend the Funding Period for an additional thirty (30) days pursuant to a written agreement signed by Investor and Escrow Agent.

See *Exhibits "A" and "B"* at ¶ 2(b).

36.     On August 23, 2021, after the Funding Period had expired, Mr. Thornton wrote to Mr. Apostol directly and demanded a return of the $100,000 ST LLC investment in compliance with the terms of the Initial Agreement.  Neither Mr. Apostol nor anyone else affiliated with the Escrow Agent provided a response at that time.

37.     After being fraudulently induced to invest the Converted Funds, Mr. Thornton thereafter determined that Defendants were propagating an illegal and fraudulent scheme to steal the Converted Funds. The Funding Period of the $500,000 investment under the Escrow Agreement had also elapsed and Mr. Thornton had yet to see any repayment of the Converted Funds.

38.     Mr. Thornton launched urgent inquiries as to the status of the payout. These inquiries were met with repeated reassurances, along with a series of false promises as to the status of payment of the Converted Funds by both Mr. Jaen and Mr. Montgomery.

39.     On December 13, 2021, Mr. Thornton wrote to Mr. Apostol directly and demanded return of the $600,000 in Converted Funds from Defendants, in compliance with the Escrow Agreement. *See Exhibit "C."*

40.     On December 27, 2021, Vallarino agreed in writing to return the Converted Funds

(the "Return Agreement"). *See Exhibit "D."*

41. However, despite the Return Agreement, Defendants have failed or otherwise refused to implement same and cause the return of Plaintiffs' funds.

42. Mr. Jaen and Mr. Montgomery have continued to make a series of apparently false promises and false reassurances claiming that the deal has been completed and that Mr. Thornton will be paid out the Converted Funds plus an additional 40% return. Mr. Jaen and Mr. Montgomery also made regular promises to Mr. Thornton that payment would be forthcoming the following day.

43. These false promises continued as recently as May 28, 2022, with Mr. Jaen claiming that:

> "…*We expect funds will arrive [at] WF* [the banking institution, Wells Fargo] *sometime today. I will keep you posted on this. Once funds are credited we will wire them 24 hours after…"*

44. Despite these false promises, Vallarino continues to retain the Converted Funds in violation of the Escrow Agreement, their fiduciary duties, and Florida law.

45. Further, Mr. Jaen also represented that certain Escrow Funds were not being kept at the designated Wells Fargo Account, but were at Chase Bank, in violation of the terms of the Initial Agreement and the Escrow Agreement.

46. Mr. Apostol is the duly authorized representative of Vallarino and the sole signatory on the Escrow Account. *See Exhibits "A"* and *"B"* at ¶¶ 2(a) and 6(a). Mr. Apostol has failed to take any action to release the funds to Mr. Thornton as required.

47. Plaintiffs have satisfied all conditions precedent to the filing of this action, or all conditions precedent have otherwise been excused, waived, or have occurred.

48.     As a result of Defendants' wrongful actions, Plaintiffs were required to retain the undersigned at a reasonable fee, and accordingly demands recovery of their reasonable attorneys' fees and costs in accordance with applicable law and paragraph seventeen (17) of the Initial Agreement and the Escrow Agreement.

## COUNT I: FRAUDULENT INDUCEMENT

### (By Plaintiffs Against Defendants Montgomerys, Mr. Jaen, and Vallarino)

49.     Plaintiffs incorporates the General Allegations of paragraphs thirteen (13) through forty- eight (48) as if fully set forth herein.

50.     The Fraudulent Misrepresentations described in the General Allegations and made by Defendants were knowingly and intentionally false.

51.     Defendants made knowing false statements concerning material facts regarding the legitimacy of the investment opportunities presented by Defendants, intending to confuse, entice, and induce Plaintiffs to execute the Initial Agreement and the Escrow Agreement, in reliance upon those false statements.

52.     Specifically, the Montgomerys fostered a relationship of goodwill and friendship with Mr. Thornton, organized various social events to gain his trust, and couched the "investment opportunity" as one exclusive to those in their inner circle. Mr. Montgomery also worked in tandem with Mr. Jaen and Vallarino to provide documents intended to promote and bolster the appearance of the legitimacy of the "investment opportunity."

53.     Both Mr. Montgomery and Mr. Jaen, individually and on behalf of Vallarino, made specific promises as to the lucrative nature of the returns on the "investment opportunities" to entice Mr. Thornton to invest. Vallarino and Mr. Jaen also ensured the Hook was paid to Mr. Thornton and made various representations concerning the nature of future "investment

opportunities" to ensure investment from Mr. Thornton again.

54.     Defendants knew or should have known that, at the time they made the Fraudulent Misrepresentations, such statements were false.

55.     Defendants intended that Plaintiffs be induced by Defendants' false statements to execute the Initial Agreement and the Escrow Agreement at issue and invest significant funds, and Plaintiffs indeed did rely on the Fraudulent Misrepresentations in consummating the alleged Initial Agreement and Escrow Agreement and investing the Converted Funds.

56.     In the course of executing the Initial Agreement and Escrow Agreement and investing the Converted Funds, Plaintiffs reasonably and justifiably relied on intentionally false statements made by Defendants.

57.     As a direct and proximate result of Plaintiffs' reliance on the Fraudulent Misrepresentations made to them by Defendants, Plaintiffs suffered damages.

58.     Plaintiffs reserve the right to amend this Complaint at the appropriate time to request punitive damages due to the intentional, willful, and grossly negligent conduct of Defendants.

**WHEREFORE**, Plaintiffs demands judgment against Defendants the Montgomerys, Mr. Jaen, and Vallarino, jointly and severally, for fraudulent inducement including all damages, taxable costs, prejudgment interest, and other relief available under applicable law.

## COUNT II: BREACH OF INITIAL AGREEMENT
### (By Mr. Thornton Against Vallarino)

59.     Mr. Thornton incorporates the General Allegations of paragraphs thirteen (13) through forty-eight (48) as if fully set forth herein.

60.     The Initial Agreement is a valid, enforceable and binding contract under Florida law, entered into by the parties hereto willingly, knowingly and without compulsion.

61.    At all materials times hereto, Mr. Thornton fully performed and/or complied with all of the terms and conditions of the Initial Agreement.

62.    Mr. Thornton has at all times abided by the terms and conditions of the Initial Agreement, and continues to do so as of this filing.

63.    The General Allegations herein establish multiple grounds of material breach of the Initial Agreement by Vallarino.

64.    Vallarino breached the contract at least by failing to return Mr. Thornton's funds after the Initial Agreement terminated by its own terms under paragraph 2(b), requiring return of Mr. Thornton's funds.

65.    Vallarino breached the contract by failing to provide regular status reports as to the status of the Converted Funds as required by paragraph 6(c) of the Initial Agreement.

66.    Further, Vallarino failed to maintain the Converted Funds in the designated account at Wells Fargo, as required by paragraph (2)(a) of the Initial Agreement.

67.    By reason of Vallarino's breach of contract, Mr. Thornton has and will continue to suffer actual damages.

**WHEREFORE**, Mr. Thornton respectfully requests the Court enter judgment against Vallarino for breach of contract, and award damages plus prejudgment interest, costs, attorney's fees pursuant to Section 17 of the Initial Agreement, and all other damages available under applicable law.

## COUNT III: BREACH OF ESCROW AGREEMENT
### (By Mr. Thornton Against Vallarino)

68.    Mr. Thornton incorporates the General Allegations of paragraphs thirteen (13) through forty-eight (48) as if fully set forth herein.

69.    The Escrow Agreement is a valid, enforceable and binding contract under Florida

law, entered into by the parties hereto willingly, knowingly and without compulsion.

70.     At all materials times hereto, Mr. Thornton fully performed and/or complied with all of the terms and conditions of the Escrow Agreement.

71.     Mr. Thornton has at all times abided by the terms and conditions of the Escrow Agreement, and continues to do so as of this filing.

72.     The General Allegations herein establish multiple grounds of material breach of the Escrow Agreement by Vallarino.

73.     Vallarino breached the contract at least by failing to return Mr. Thornton's funds after the Escrow Agreement terminated by its own terms under paragraph 2(b) requiring return of Mr. Thornton's funds to him.

74.     Vallarino breached the contract by failing to provide regular status reports as to the status of the Converted Funds as required by paragraph 6(c) of the Escrow Agreement.

75.     Further, Vallarino failed to maintain the Converted Funds in the designated account at Wells Fargo, as required by paragraph (2)(a) of the Escrow Agreement.

76.     By reason of Vallarino's breach of contract, Mr. Thornton has and will continue to suffer actual damages.

**WHEREFORE**, Mr. Thornton respectfully requests the Court enter judgment against Defendants Vallarino for breach of contract, and award damages plus prejudgment interest, costs, attorney's fees pursuant to Section 17 of the Escrow Agreement, and all other damages available under applicable law.

### COUNT IV: BREACH OF RETURN AGREEMENT
**(Plaintiffs Against Vallarino)**

77.     Plaintiffs incorporate the General Allegations of paragraphs thirteen (13) through forty-eight (48) as if fully set forth herein.

78.     The Return Agreement is a valid, enforceable and binding contract under Florida law, entered into by the parties hereto willingly, knowingly and without compulsion.

79.     At all materials times hereto, Plaintiffs fully performed and/or complied with all of the terms and conditions of the Return Agreement.

80.     Plaintiff has at all times abided by the terms and conditions of the Return Agreement, and continues to do so as of this filing.

81.     The General Allegations herein establish multiple grounds of material breach of the Return Agreement by Vallarino.

82.     Vallarino breached the Return Agreement at least by failing to return the Converted Funds.

83.     By reason of Vallarino's breach of the Return Agreement, Plaintiffs have and will continue to suffer actual damages.

**WHEREFORE**, Plaintiffs respectfully requests the Court enter judgment against Vallarino for breach of contract, and award damages plus prejudgment interest, costs, and all other damages available under applicable law.

## COUNT V: UNJUST ENRICHMENT
### (in the alternative)
### (By Plaintiffs Against Vallarino)

84.     Plaintiffs incorporates the General Allegations of paragraphs thirteen (13) through thirty-two (32) and thirty-six (36) through forty-eight (48)  as if fully set forth herein.

85.     Plaintiffs conferred a direct benefit on Vallarino by having invested the Converted Funds, when no legitimate opportunity for return on investment existed.

86.     Vallarino voluntarily sought, accepted, and retained Plaintiffs' Converted Funds.

87.     Based on the facts and circumstances stated herein, it would be inequitable for

Vallarino or its agents to retain the direct benefit of the Converted Funds received from Plaintiffs, when no legitimate opportunity for return on investment existed.

88.     Vallarino was unjustly enriched at the expense and detriment of Plaintiffs, having received the material direct benefit of the Converted Funds despite no legitimate opportunity for return on investment.

89.     Plaintiffs have no adequate legal remedy under the circumstances.

90.     Plaintiffs are entitled to monetary and other damages as a result of Vallarino's unjust enrichment.

**WHEREFORE**, Plaintiffs respectfully requests the Court enter judgment against Vallarino for unjust enrichment, including damages, prejudgment interest, and all other damages, costs, and other relief available under applicable law.

### COUNT VI: VIOLATION OF VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (Fla. Stat. § 501.201 *et seq.*) – COMPANY
### (By Plaintiffs Against Vallarino, Mr. Jaen, and Apostol)

91.     Plaintiffs re-allege and incorporate the General Allegations of paragraphs thirteen (13) through forty-eight (48) as if fully set forth herein.

92.     Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**") is to be liberally construed to protect the consuming public, such as the Plaintiffs in this case, from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair actual practices in the conduct of any trade or commerce, such as Defendants in this case.

93.      Plaintiffs are consumers within the meaning of Section 501.203(7), Florida Statutes.

94.      Vallarino, Mr. Jaen, and Mr. Apostol engaged in trade or commerce within the meaning Section 501.203(8), Florida Statutes, at least by interacting with Plaintiffs to conduct a

business transaction, entering into the Escrow Agreement at issue, and supposedly providing professional services to Plaintiffs.

95.     FDUTPA incorporates by reference the Federal Trade Commission's ("FTC") recognition that "deceptive" and "unfair" practices include representations, omissions or practices likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.

96.     Vallarino, Mr. Jaen, and Mr. Apostol's conduct in intentionally making the Fraudulent Misrepresentations to Plaintiffs to lure them into the Escrow Agreement and into investing the Converted Funds at issue was unfair, unconscionable, and deceptive. Per the Initial Agreement and the Escrow Agreement,  Mr. Apostol is the sole signatory for the Escrow Account and necessary in facilitating any transactions concerning the Converted Funds.

97.     As a result of Vallarino, Mr. Jaen, and Mr. Apostol's deceptive trade practices, Plaintiffs were deceived into entering into the Escrow Agreement and investing the Converted Funds.

98.     Vallarino, Mr. Jaen, and Apostol's conduct misled Plaintiffs, who were acting reasonably under the circumstances, into relying on Vallarino, Mr. Jaen, and Mr. Apostol's assurances to their detriment, to wit, that the Converted Funds were legitimately invested and that Plaintiffs had a legitimate opportunity to obtain a return on investment.

99.     Vallarino, Mr. Jaen, and Apostol's conduct was likely to deceive a consumer acting reasonably in Plaintiffs' circumstances.

100.    The materially false statements and omissions as described above, and the fact that Vallarino, Mr. Jaen, and Mr. Apostol perpetuated upon Plaintiffs a sham transaction, or unfair, unconscionable, and deceptive practices, would have likely deceived any reasonable consumer

under the circumstances.

101.    Upon information and belief, Vallarino, Mr. Jaen, and Mr. Apostol's conduct is one example of a broader scheme to regularly defraud potential investors and other members of the consuming public in Florida and otherwise.

102.    As a direct and proximate result of Vallarino, Mr. Jaen, and Mr. Apostol's unfair, unconscionable and deceptive conduct, Plaintiffs suffered actual damages, including but not limited to the full amount of the Converted Funds, interest, lost opportunities, and attorneys' fees.

103.    Vallarino, Mr. Jaen, and Mr. Apostol accordingly each engaged and unfair, unconscionable and deceptive trade practices in violation of Section 501.201 et seq., Florida Statutes, in making the Fraudulent Misrepresentations to Plaintiffs and in propagating a sham and stealing the Converted Funds.

104.    Pursuant to Sections 501.211(2) and 501.2105, Florida Statutes, Plaintiffs are entitled to recover from Vallarino, Mr. Jaen, and Mr. Apostol the reasonable amount of attorneys' fees they incur in representing their interests in this matter.

105.    Plaintiffs reserve the right to amend this Complaint at the appropriate time to request punitive damages due to the intentional, willful, and grossly negligent conduct of Vallarino, Mr. Jaen, and Mr. Apostol.

**WHEREFORE**, Plaintiffs demands judgment against Vallarino, Mr. Jaen, and Apostol, jointly and severally, for violation of FDUTPA, including any and all damages together with interest, attorney's fees, legal costs and expenses, and all other damages and/or equitable remedies allowable by law and found to be just, lawful and appropriate.

## COUNT VII: BREACH OF FIDUCIARY DUTY
### (By Plaintiffs Against Vallarino, Mr. Jaen, and Apostol)

106.    Plaintiffs re-alleges and incorporates the General Allegations of paragraphs thirteen

(13) through forty-eight (48) as if fully set forth herein.

107.    Vallarino was charged with the role of escrow agent under the Escrow Agreement and the Initial Agreement.

108.    Vallarino managed the accounting of the Converted Funds, as escrow agent.

109.    Mr. Apostol was listed as the representative of Vallarino under both Agreements and is the individual with sole signatory powers on the Escrow Account per the Escrow Agreement and the Initial Agreement.

110.    Mr. Jaen acted on behalf of Vallarino by taking affirmative steps to effect execution of the Initial Agreement and Escrow Agreement, offering to answer any questions Plaintiffs had regarding legality of the contracts at issue, thereby holding himself out to Plaintiffs in a fiduciary capacity.

111.    Plaintiffs placed trust and confidence in Vallarino, Mr. Jaen, and Mr. Apostol properly manage the Converted Funds and properly act as escrow agent under the Escrow Agreement and the Initial Agreement.

112.    Vallarino, Mr. Jaen, and Mr. Apostol accepted this fiduciary capacity and Plaintiffs' placement of trust and confidence in them, and as such, owed fiduciary duties to Plaintiffs.

113.    Such fiduciary duties were breached at least when Vallarino, through Mr. Apostol and Mr. Jaen, manipulated the flow of revenue among entities, stole the Converted Funds, and refused to return them to Plaintiffs.

114.    For example, and without limitation, Vallarino, Mr. Jaen, and Mr. Apostol failed to pay Plaintiffs the promised percentages of profit, failed to return the Converted Funds to Plaintiffs, failed to keep Plaintiff timely advised as to the status of the Funds, and failed to respond to Plaintiffs' written inquiries.

115.    As a direct result of Vallarino, Mr. Jaen, and Mr. Apostol's breach of fiduciary duty, Plaintiffs have suffered grave pecuniary damages.

116.    Plaintiffs reserve the right to amend this Complaint at the appropriate time to request punitive damages due to the intentional, willful, and grossly negligent conduct of Vallarino, Mr. Apostol, and Mr. Jaen.

**WHEREFORE**, Plaintiffs demand judgment against Vallarino, Mr. Jaen, and Mr. Apostol, jointly and severally, for breach of fiduciary duty, including any and all damages together with interest and all other damages allowable by law and found to be just, lawful and appropriate.

## COUNT VIII: CIVIL CONSPIRACY
### (By Plaintiffs Against All Defendants)

117.    Plaintiff incorporates the General Allegations of paragraphs thirteen (13) through Forty-eight (48) as if fully set forth herein.

118.    By and through means which are not yet fully known, Defendants conspired to defraud Plaintiffs by making the False Misrepresentations, inducing Plaintiff's to invest the Converted Funds, and stealing the Converted Funds.

119.    Among other things and in furtherance of the conspiracy the Montgomerys and Mr. Jaen, individually on behalf of Vallarino, targeted Plaintiffs to invest the Converted Funds knowing that they would not receive a return.

120.    Among other things and in furtherance of the conspiracy, the Montgomerys worked together to establish a social relationship with Mr. Thornton, to further their goodwill with him and ST LLC, and to persuade Plaintiffs to make an investment to their detriment.

121.    Among other things and in furtherance of the conspiracy, Mr. Montgomery,

Vallarino, and Mr. Jaen persuaded Plaintiffs to invest based on false promises of returns, presenting various purported government documents to establish the legitimacy of the funds, ensured that Mr. Thornton received the Hook to persuade him to invest additional funds, kept the Converted Funds, and continued to make false promises and assurances to Plaintiffs that the Converted Funds would be returned.

122.     Among other things and in furtherance of the conspiracy, Vallarino and Mr. Apostol failed to provide Plaintiffs with the Converted Funds even after demands were made pursuant to the Contract and regularly thereafter.

123.      Among other things and in furtherance of the conspiracy, Mr. Apostol was the sole signatory of the Escrow Account on behalf of Vallarino and was thus instrumental in necessary financial transactions in furtherance of the conspiracy.

124.     As a direct and proximate result of this civil conspiracy, Plaintiffs have suffered damages.

125.     Plaintiffs reserve the right to amend this Complaint at the appropriate time to request punitive damages due to the intentional, willful, and grossly negligent conduct of Defendants.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for civil conspiracy for monetary damages, costs, and all other relief available under applicable law.

## COUNT IX: CONSTRUCTIVE FRAUD
### (By Plaintiffs Against Vallarino, Mr. Apostol, and Mr. Jaen)

126.     Plaintiff incorporates the General Allegations of paragraphs thirteen (13) through forty-eight (48) as if fully set forth herein.

127.     Under the Initial Agreement and the Escrow Agreement Vallarino and its associates, including Mr. Apostol and Mr. Jaen, owed fiduciary duties to Plaintiffs.

128.    Plaintiffs placed trust and confidence in Vallarino, Mr. Apostol, and Mr. Jaen and trusted that these Defendants would appropriately manage the Converted Funds, would return the Converted Funds, and would communicate appropriately with Plaintiffs concerning the status of the Converted Funds.

129.    Vallarino, Mr. Apostol and Mr. Jaen took improper advantage of the fiduciary relationship  and abused the fiduciary relationship, when, amongst other things, they stole the Converted Funds and failed to return the Funds to Plaintiffs as required under their respective agreements.

130.    Plaintiffs, Vallarino, Mr. Apostol, and Mr. Jaen were not dealing at arm's length.

131.    Instead Vallarino, Mr. Apostol and Mr. Jaen misrepresented and continued to misrepresent the status of the funds to Plaintiffs.

132.    As a direct and proximate result of this constructive fraud, Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for monetary damages, costs, and all other relief available under applicable law.

### <u>COUNT X: CONVERSION</u>
**(By Plaintiffs Against All Defendants)**

133.    Plaintiffs re-allege and incorporate the General Allegations of paragraphs thirteen (13) through forty-eight (48) as if fully set forth herein.

134.    Plaintiffs are the rightful owners of the Converted Funds, which were clearly designated and identifiable via two wire transfers and which delivered to Defendants in reliance on the representations made by the Defendants, pursuant to the Initial Agreement and the Escrow Agreement.

135.    Plaintiffs had an immediate right to possession of the Converted Funds, and

Defendants had an obligation to keep intact and/or deliver the Converted Funds to Plaintiffs.

136.    However, Defendants exercised multiple and repeated positive, overt acts of dominion or authority over the Converted Funds, which is inconsistent with and adverse to the rights of the true owners: Plaintiffs.

137.    Plaintiffs demanded Defendants cease their activities and return the Converted Funds to Plaintiffs.

138.    Defendants refused or otherwise failed to cease and desist or return any Converted Funds to Plaintiffs whatsoever.

139.    Plaintiffs have suffered damages as a direct result of Defendants' conversion of Plaintiffs rightfully owned property, the Converted Funds.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for conversion, including any and all damages together with interest, attorney's fees, legal costs and expenses, and all other damages allowable by law and found to be just, lawful and appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED this 8th day of June 2022.

Respectfully submitted,

By: /s/ David K. Markarian
David K. Markarian
Florida Bar No. 480691
dave@forbusinessandlife.com
Jessica R. Glickman
Florida Bar No. 118586
jessica@forbusinessandlife.com
David R. Glickman
Florida Bar No. 118685
davidg@forbusinessandlife.com
**THE MARKARIAN GROUP**
2925 PGA Boulevard, Suite 204
Palm Beach Gardens, Florida 33410
**Telephone**: (561) 626-4700
**Facsimile**:  (561) 627-9479
*Attorneys for Plaintiff George C. Thornton*

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by electronically via CM/ECF on June 8, 2022 on all counsel or parties of record on the Service List below.

By: /s/ David K. Markarian

## SERVICE LIST

David K. Markarian, Esq.
dave@forbusinessandlife.com
The Markarian Group
2925 PGA Blvd., Suite 204
Palm Beach Gardens, FL 33410
Telephone: (561) 626-4700
Facsimile: (561) 627-9479
Attorneys for Plaintiffs George C. Thornton
and Saunders Thornton LLC